## Case No. 4,150.
DUNHAM et al. v. EATON & H. R. CO. et al.
[1 Bond, 492.] [1]
Circuit Court, S. D. Ohio. Oct. Term, 1861.

M. H. Tilden, for plaintiffs.
Wm. B. Caldwell, for defendants.

OPINION OF THE COURT. The question before the court arises on a demurrer

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

to the supplemental bill filed by the complainants, the object of which is to carry into effect the decree of this court based on the original bill. The objection mainly relied on, and urged in argument in support of the demurrer, is the alleged uncertainty in the statement of the nature and extent of the liability and indebtedness of the defendants, and the want of any sufficient reason or excuse for such uncertainty. The supplemental bill recites the material averments in the original bill, to which the Louisville and Sandusky Railroad Company and the Eaton and Hamilton Railroad Company were the only defendants. These recitals are, in substance, that the last-named company, being about to construct a railroad from the town of Piqua to the town of Eaton, in the state of Ohio, obtained from divers persons, averred to be unknown to the complainants, by way of subscriptions for the construction of the branch road from Piqua to Eaton, certain moneys, bonds, bills, notes, and securities; that the complainants with another person, who has since assigned his interest in the contract, on September 15, 1853, entered into a written contract with the Eaton and Hamilton Railroad Company, by which they agreed to construct the railroad from Piqua to Eaton, at prices stipulated between the parties, and by which it was expressly agreed that the complainants were to be paid exclusively and only out of the subscriptions for the construction of said branch road; that some time after the complainants had entered upon the execution of said contract, the Eaton and Hamilton Railroad Company assigned the branch road from Piqua to Eaton, and the said contract, together with the subscriptions and all funds procured for the special purpose of constructing said branch road, to the Louisville and Sandusky Railroad Company; that company agreeing to construct the branch road, and to comply with the contract made with the complainants, and to apply the subscriptions and funds specially obtained for the construction of the branch road, to that object; that the complainants continued in the execution of said contract until September, 1854, when they were required by said Louisville and Sandusky Railroad Company to suspend operations; and that when they so suspended, there was a large amount due them for work done, and materials furnished, in the construction of the road; that the Louisville and Sandusky Railroad Company suspended all business operations and wholly failed to collect and apply the special subscriptions for the construction of the branch road to the payment of the complainants. The supplemental bill further avers, that by the original bill it was claimed that the complainants had a specific lien on the subscriptions and funds raised for the purpose of constructing the road from Piqua to Eaton, and were entitled in equity to enforce payment from the persons who had

become subscribers of stock for that specific purpose; and the bill prayed an account of such subscriptions and a discovery of the names of those who had thus subscribed and were liable therefor.

The supplemental bill further avers that at the April term of this court, in the year 1858, a decree was entered in the original case against the Louisville and Sandusky Railroad Company, in favor of the complainants, for $12,181, as the sum due them for work done under their contract in the construction of the Piqua and Eaton road; and that it was held and adjudged by said decree that the complainants had a specific claim to, or lien upon, the stock subscriptions made for the purpose of constructing said branch road. And by said decree it was further provided that the case should be referred to a master to ascertain and report the property and effects of the Louisville and Sandusky Railroad Company, which, when ascertained, were to be delivered to a receiver, then appointed by the court. It is then averred that the supplemental bill is filed to obtain "the aid and assistance of this court to carry said decree into execution;" and also, "that the following-named persons became and are subscribers to the capital stock of said Eaton and Hamilton, and to the stock of said Louisville and Sandusky Railroad Company, and that they subscribed their said stock for the special purpose of having the same applied to the construction of said line of road from Eaton to Piqua." Then follow the names of these persons numbering several hundred, averred to be subscribers or stockholders for the construction of the last-named road, and as to whom the prayer of the bill is, that they may be made defendants thereto, and may be required to answer; and that an account may be taken of the sum due from them respectively, and that they may be adjudged to pay the same to the complainants.

By an amendment to the supplemental bill, it is averred "that each and every one of the said defendants named is indebted on account of their said subscriptions to said stock therein set forth, subscribed for the special purpose of constructing such branch road, and made to said Eaton and Hamilton Railroad, but the complainants do not know, and are unable to state, the several amounts due from them, or any or either of them, and they pray that each and every of them may be compelled to state and set forth by answer on oath the amount respectively subscribed and paid by them, and when and how the same was paid, and when and how the same was subscribed, and that it be referred to the master to inquire and report how much remains due from each and every of them," etc.

This reference to the recitals and allegations of the supplemental bill seems necessary to a right understanding of the question presented on this demurrer. It will be-

seen that it is simply a question of pleading, and its decision either way will not affect the merits of this controversy. The demurrer admits all the facts alleged in the bill, and presents the single inquiry, whether those facts, as set forth, are sufficient to fix liability on these defendants. All inquiry into the regularity and validity of the original decree is precluded, in the present posture of the case. The decree is conclusive on them, though not parties to the original bill, so far as it establishes the equity of the claim of these complainants, as set up in that bill. It finds the fact that under their contract with the Eaton and Hamilton Railroad Company, the complainants performed labor in the construction of the Piqua and Eaton Branch, to the amount of $12,181, which is now justly due them; and also that they have a specific lien on the subscriptions of stock, made expressly for that object, which ought in equity to be enforced. But this decree can be of no avail to the complainants, until it is ascertained who are the subscribers to that stock, and the amount due from each. To effect this object the supplemental bill is filed, setting out the names of those subscribers as far as known, and asking the aid of this court in carrying into effect the original decree. And it prays that these demurring defendants may be required to disclose on oath to which of the companies their subscriptions, were made, the amount of such subscription, and the sum due from each, on account of such subscription. These are matters which these defendants have an undoubted right to litigate, and which they could put in issue by their answers. They have, however, declined to answer, and by their demurrer present the question to the court, whether the allegations of the bill are so made as that they can be required to answer.

In support of the demurrer, it is insisted, in the first place, that the bill is defective in not stating with any certainty, whether the stock subscriptions of the defendants were made to the Eaton and Hamilton, or the Louisville and Sandusky Railroad Company, and also in not setting out the sum subscribed by each, and the amount of the indebtedness of each, and the amount now claimed as due from each. And it is also insisted that the bill alleges no sufficient excuse for the vagueness and uncertainty of its averments as to these facts.

As to these subscriptions, it is expressly averred, in the supplemental bill, that these defendants "became and are subscribers to the capital stock of said Eaton and Hamilton Railroad Company, and to the stock of said Louisville and Sandusky Railroad Company," and that "they subscribed their said stock for the special purpose of having the same applied to the construction of said line of road from Eaton to Piqua." The bill further avers, that the said "defendants are indebted on account of said subscriptions, but the complainants do not know and are unable to state the amounts due from them, or either of them," and they pray for an account and discovery, etc. Are these allegations sufficiently certain to put the defendants on their answer? There can be no question that some degree of strictness is required in chancery pleadings, as well as those at law. Judge Story says on this subject: "It may, perhaps, be correctly affirmed, that certainty to a common intent is the most that the rules of equity ordinarily require in pleadings for any purpose." Com. Eq. Pl. 206. In the same work, after stating that the bill should set forth the right and title of the plaintiff, together with the grievance of which he complains, and the relief which he seeks, with accuracy and clearness, he adds, "the other material facts ought to be plainly, yet succinctly alleged, with all necessary and convenient certainty, as to essential circumstances of time, place, manner, and other incidents." Id. 206, 207. Another writer on equity pleadings says, "the plaintiff in his bill is not required to set out all the minute facts of his case." The general statement of a precise fact is usually sufficient, and the circumstances which go to establish it, need not be minutely charged; for they more properly constitute matters of evidence than of allegation; and "general terms are sufficient when the subject comprehends a multiplicity of matter and when the particulars are more fully known to the opposite party." Welford, Eq. Pl 6, 88.

It would seem that this bill contains all the allegations of material facts required by these rules. The fact is distinctly alleged, that these defendants subscribed stock to the Eaton and Hamilton and the Louisville and Sandusky roads for the express purpose of constructing the Eaton and Piqua Branch, and are liable in equity to account to the complainants therefor. These are the material facts which constitute the right of the complainants to enforce the claim asserted by them. The ground of that claim is, that the defendants by reason of these subscriptions subjected themselves to liability, and that such liability now exists in favor of the complainants. And surely it can not be necessary to their defense that the bill should state all the particulars of these subscriptions, including the amount subscribed and due by each one of several hundred persons. This would be unnecessarily and most inconveniently to incumber the record in the case.

And again—the enforcement of the rigid rule of pleading, insisted on in support of this demurrer, would leave the complainants wholly without remedy, and altogether defeat the purpose of their bill. The very prayer of the bill is, that they may have a discovery from the defendants concerning the matters in regard to which the alleged uncertainty exists. If the allegations of the complainants are true, that they do not know, and have not the means of ascertain-

ing these matters, except by a discovery from the defendants, it is very clear they are without any remedy unless they can call on them for a discovery as prayed for in the supplemental bill. The facts about which they are required to answer are within their knowledge, and they can not be taken by surprise in being called upon to answer. They certainly know whether they subscribed stock for the purpose alleged, to which company it was subscribed, how much of it has been paid, and what is now due. And I am at a loss to perceive the hardship of requiring them to disclose these facts by their answers. If they or any of them are not indebted, it is a good defense to the claim asserted against them; and if there is a just indebtedness on account of their subscription, the complainants have an equitable claim for it. True, the defendants, if they prefer that course, may decline to answer, and allow a decree pro confesso to pass against them. In that event, the court, on application, would direct the master to take and report a statement of the indebtedness of each of the defendants. And, if it should be necessary for this purpose, that the master should examine them touching their indebtedness, one of the rules of chancery practice of this court confers ample authority to do so. The 77th rule is referred to, which provides among other things, in cases of reference to a master, that "he shall have full authority to examine the parties to the cause touching all matter contained in the reference, and also to require the production of all books, papers, writings, vouchers, and other documents applicable thereto."

The counsel for the demurring parties insist further, that this supplemental bill can not be sustained for the reason that by the decree in the original case, a master was appointed with power to take and state an account of the subscriptions of these defendants, and other matters concerning which the bill prays for a discovery; also, that by the decree a receiver was appointed with authority to take possession of and dispose of all the assets in question. The argument is, that as the complainants have chosen to adopt this course, they are precluded from calling for a discovery by supplemental bill as the two modes of proceeding are conflicting and incongruous. This presents a question of chancery practice altogether new to me, and in regard to which no authorities are cited. I suppose, however, it is clear that if the receiver had actually proceeded under the original decree to reduce into his possession the property or assets, the complainants could not call on the defendants for a disclosure by means of a supplemental bill. But there is nothing before the court showing that either the master or receiver heretofore appointed, have taken any steps in the execution of their appointments touching the matters now in controversy. Indeed, it does not appear that the receiver has ac-

cepted the trust, or that he intends doing so. The mere fact that persons were named as master and receiver in the original decree, in the absence of any showing that they have done anything in the performance of their duties, is no bar to the present procedure. Upon the whole, I can see no sufficient reason for sustaining the demurrer to the bill, and it is accordingly overruled.